UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAYMAN NATIONAL BANK, LTD.,

    Petitioner,

vs.                                                  Case No.: 8:06-mc-50-T-24MAP

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

Both Petitioner and Respondent are attempting to collect a debt within the United States owed by Robert R. Penrod; Petitioner is seeking to collect on a default judgment entered in the Cayman Islands and Respondent is seeking to collect taxes.  In March 2002, Petitioner contacted Smith Clark Delesie Bierley Mueller & Kadyk ("Smith Clark"), a Tampa law firm, for legal advice concerning potential legal action against Penrod and Gred Streck, who were guarantors of a defaulted loan from Petitioner to Red Bay Drugs Ltd.  On June 15, 2004, the Cayman Islands court entered a default judgment against Penrod and Streck in favor of Petitioner.  Thereafter, in March 2006, attorney John H. Mueller of Smith Clark filed the judgment in Hillsborough County Circuit Court.  In May 2006, Smith Clark received a summons from the Internal Revenue Service seeking documents relating to the judgment.  It is this summons that Petitioner seeks to quash.  Petitioner bases its petition on several grounds; the documents are exempt from disclosure under the attorney client and/or work product privileges; Respondent should obtain the documents under the Tax Information Exchange Agreement; the summons is ambiguous, vague, and overbroad; production would violate Cayman Islands law; the Court is without jurisdiction to order disclosure; the IRS

failed to follow its procedures prior to issuing the summons; the summons requests documents not in the attorney's control; service was improper; and the IRS may have alternative means for obtaining the information. Because I find none of these arguments persuasive, the motion (doc. 1) is denied.

### A. Attorney/client and work product privilege

Petitioner contends that the documents in Smith Clark's possession were sent to them by Petitioner to obtain legal advice and they contain an attorney's thoughts, opinions, conclusions, and legal theories. Therefore, according to Petitioner, these documents are protected under the attorney/client or work product privilege. Respondent contends that it seeks only documents relating to the transaction between Petitioner and Penrod - not the attorney's files.

"The attorney-client privilege protects confidential communications between a client and his attorney where the communications concern legal advice or tend to disclose information given to the attorney by the client." *Fed. Deposit Ins. Corp. v. Cherry, Bekaert, & Holland*, 131 F.R.D. 596, 599 (M.D. Fla. 1990), *citing In re Grand Jury Subpoena*, 788 F.2d 1511, 1522 (11th Cir. 1986). The party claiming privilege has the burden of proof to establish the existence of the attorney-client relationship and the confidential nature of the records. *Id.* On the other hand, "[t]he work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for that party's attorney acting for his client." *Id.* at 600.

None of the documents sought by Respondent fall under the attorney-client or work product privilege. The summons asked for "all documents relating to this judgment... ." They are simply documents relating to the loan transaction between Cayman National and Penrod. Respondent does not request documents regarding any legal advice given to Petitioner from Smith Clark or any

documents prepared in anticipation of litigation. Therefore, they do not fall under either privilege.

   *2. The Tax Information Exchange Agreement (TIEA)*

Petitioner contends that Respondent should seek the information under the TIEA, which allows the United States and the United Kingdom, including the Cayman Islands, to obtain information from each other. However, the TIEA was not effective until January 1, 2006, and Respondent seeks documents relating to a 2004 judgment. *See* doc. 15-2, p. 16. Therefore, the information would not fall under the TIEA.

   *3. The summons is ambiguous, vague, and overbroad*

Petitioner claims the summons is unclear as to whom it is addressed and what documents it seeks. It claims that the summons is a "fishing expedition" being conducted on a neutral third party. Petitioner also argues the word "all" in the summons is vague and overbroad, and that compliance with the summons could result in information being disclosed regarding an individual other than Penrod, which would violate that individual's Fourth Amendment rights.[1]

"An IRS summons is overbroad if it 'does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons.' " *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (citing *United States v. Wyatt*, 637 F.2d 293 (5th Cir. 1981)). A summons such as the instant one which contained the word "all" was approved by the Eleventh Circuit in *Medlin*. This summons clearly identifies the subject matter of the documents by referring to the judgment entered against Penrod and sufficiently alerts Petitioner as to what

---

[1] The summons requests "all documents relating to this judgment, which includes but is not limited to; nature of the obligation, contracts, proposals, amount due and reason for default" and "copies of cancelled checks (front & back), wire transfers or other instruments in conjunction with this transaction." *See* doc. 2, p. 24.

should be produced. It also gives examples of the types of documents sought by Respondent. The summons was clearly addressed to Cayman National Bank in the care of John H. Mueller. Furthermore, the fact that another individual might be referenced in the documents does not affect the right of Respondent to the documents.

  *4. Production would violate Cayman Islands law*

Petitioner argues that production of the documents would result in potential violation of Cayman Islands law. Specifically, Petitioner cites the Confidential Relationships (Preservation) Law of the Cayman Islands ("CRPL") which prevents a Cayman Islands bank from disclosing any confidential information on a customer including "information concerning any property which the recipient thereof is not, otherwise than in the normal court of business, authorized by the principal to divulge." Respondent argues that it is unclear whether Cayman Islands's law would be violated by producing the documents.

The United States courts must follow international law in enforcing an IRS summons. *United States v. Toyota Motor Corp.*, 569 F. Supp. 1158, 1162 (D.C. Cal. 1983). In determining whether to enforce a summons for documents from an entity subject to the laws of another country which prohibits production, the court should balance the following factors set forth in section 40 of the *Restatement (Second) of the Foreign Relations Laws of the United States* (1965):

  (a) vital national interests of each of the states,

  (b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

  (c) the extent to which the required conduct is to take place in the territory of the other state,

  (d) the nationality of the person,

  (e) the extent to which enforcement by action of either state can reasonably be expected to

achieve compliance with the rule prescribed by that state.

*United States v. Rubin*, 836 F.2d 1096, 1101 (8th Cir. 1988). The Eleventh Circuit has noted that "[i]n a world where commercial transactions are international in scope, conflicts are inevitable." *United States v. The Bank of Nova Scotia*, 691 F.2d 1384, 1391 (11th Cir. 1982). However, United States prosecutions should not be thwarted every time there is a conflict with another country. *Id.*

The factors set forth in the Restatement weigh in favor of production. As for the competing national interests, "various courts have held that the Cayman interest in preserving the privacy of its banking customers is substantially diminished when the privacy interest is that of an American citizen (or entity) subject to American laws." *Rubin,* 836 F.2d at 1102. Moreover, when an action is brought by the United States government rather than a private litigant, it strongly supports a substantial American interest in obtaining the information. *United States v. Toyota Motor Corp.*, 569 F. Supp. 1158, 1162-63 (D.C. Cal. 1983). Because the government is seeking to enforce the summons in relation to a tax investigation against an American citizen, it has a more substantial interest in having the subpoena enforced rather than the Cayman Islands in having it quashed. Additionally, the documents are to be produced in the United States, which does not pose a hardship on Petitioner, especially considering it has retained a Florida attorney in an effort to enforce a judgment. Therefore, the Restatement factors weigh in favor of production.

*5. The Court is without jurisdiction to order disclosure*

Petitioner argues that the Court's jurisdiction only extends to those documents within Smith Clark's control, not to those documents that Smith Clark would have to retrieve from the Cayman Islands. Respondent argues that Petitioner waived any right to object to this Court's personal jurisdiction by filing its petition here.

Personal jurisdiction is an individual right which can be waived. *Ins. Co. of Ireland, LTD., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703. "An individual may submit to the jurisdiction of the court by appearance." *Id.* In this case, Petitioner submitted to the jurisdiction of this Court by filing its petition here. Therefore, it is unable to now claim the Court does not have jurisdiction over the summons that Plaintiff's motion seeks to quash.

*6. The IRS failed to follow its procedures prior to issuing the summons*

Petitioner argues that Respondent has not demonstrated that it followed the administrative requirements to enforce an IRS summons. Respondent claims it has established that the administrative steps followed by the Internal Revenue Code have been followed.

The government may establish its prima facie case for enforcement solely through the sworn declaration of the revenue agent who issued the summons. *United States v. Medlin*, 986 F.2d 463, 466 (11th Cir. 1993). Once the government makes this prima facie showing, the burden shifts to the petitioner to show that the summons is invalid or that enforcement of the summons would be an abuse of process. *United States v. Powell,* 379 U.S. 48, 58 (1964); *Medlin,* 986 F.2d at 466. To meet this burden, the petitioner must come forward with specific sworn facts which establish a legally cognizable defense or refute the government's prima facie case. *United States v. Samuels, Kramer & Co.,* 712 F.2d 1342, 1347-48 (9th Cir. 1983); *United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36, 42-43 n. 9 (2nd Cir. 1978).

The government must establish compliance with four well-known elements to state a prima facie case for enforcement of a summons. These elements are: 1) the summons was issued for a proper purpose; 2) the information sought in the summons is relevant to the investigation; 3) the information sought is not already in the possession of the IRS; and 4) all administrative steps were

followed in the issuance of the summons. *Powell*, 379 U.S. at 57-58; *Medlin*, 986 F.2d at 466. In this case, the declaration of Revenue Agent Shatraw (doc. 15-2) satisfies the government's burden under *Powell*. Moreover, Petitioners have not offered any evidence refuting the government's prima facie case or raising a legally recognized defense.

       7. *The summons requests documents not in the attorney's control.*

This argument is difficult to follow. It appears that Petitioner contends that the requested documents are not in Smith Clark's possession and Smith Clark does not have authority to require production of any additional documents from Petitioner. Furthermore, Petitioner contends that it has no further documents regarding Penrod's financial affairs other than those already in the possession of Smith Clark that are responsive to the summons. Respondent argues that Petitioner's contention misses the mark - it seeks all documents related to the transaction that forms the basis of the judgment that Petitioner seeks to enforce.

If Petitioner has provided Respondent with all documents responsive to the subpoena, the motion to quash should be granted, unless Respondent can provide some evidence regarding documents that is reasonably believes exists, but it has not received. If Petitioner has documents responsive to the request that it has not provided its attorneys, it is required to produce those documents to Respondent.

       *8. Service was improper*

Petitioner argues that Respondent incorrectly sent the summons to Petitioner's attorney, which is not the location of the records nor the agent authorized to receive service. Specifically, Petitioner points to Section 7603 of the Internal Revenue Code which requires that a summons "shall be ... delivered in hand to the person to whom it is directed... ." *See* 26 U.S.C. 7603(a). Respondent

contends that Petitioner's failure to timely object to improper service resulted in a wavier.

Where there is no immediate complaint regarding a procedural defect in service, the party objecting to the summons waives strict compliance with the requirements of section 7603. *United States v. Payne*, 648 F.2d 361, 362 (5th Cir. 1981).[2] In the instant case, Petitioner did not object to the improper service in its original motion to quash the summons. The issue was not raised until three months later in the Petitioner's Answer to Respondent's counter-petition. Had Petitioner raised its objections sooner, any defect in service could have been remedied "easily and inexpensively" through a second service. *Id.* Therefore, Petitioner waived any objection it had to improper service.

*9. The IRS may have alternative means for obtaining the information.*

Petitioner contends that Respondent may be able to petition the Cayman Islands court to obtain the information or request Penrod sign a waiver to allow production of the documents. Respondent contends that it is not required to establish that no alternatives are available for the information.

The Eleventh Circuit has held that seeking judicial assistance from a foreign country "is not a substantially equivalent means for obtaining production because of the cost in time and money and the uncertain likelihood of success in obtaining the order." *In re Grand Jury Proceedings v. Bank of Nova Scotia*, 691 F.2d 1384, 1390 (11th Cir. 1982). In *Nova Scotia*, the court rejected this procedure because it did not "afford due deference" to the United States's interests in enforcing its tax laws. *Id.* at 1391. Such is the case here. Petitioner is asking the Court to require Respondent to

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

seek the Cayman Island's permission in enforcing the United States's tax laws, which is "contrary to the interests of our nation and outweighs the interests of the [Cayman Islands]." *Id.*

Accordingly, it is:

ORDERED:

1. Cayman National Bank's Petition to Quash Summons (doc. 1) is **DENIED**;

2. The Clerk is directed to terminate all pending motions and close the case.  DONE AND ORDERED in Chambers, at Tampa, Florida, on this 20th day of October, 2006.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:   Counsel of Record